CANADY, J.,
dissenting.
Because I disagree with the majority’s interpretation of the settlement agreement as prohibiting FPUC from recovering the costs of the FPL interconnection through the fuel clause, and I would conclude that competent, substantial evidence supports the Commission’s determination that the costs of the FPL interconnection may be recovered through the fuel clause, I dissent.
The settlement agreement entered into by FPUC and OPC, and approved by the Commission, provides, in pertinent part:
Except as provided in this Agreement, it is the intent of the Parties ... that FPUC not be allowed to recover through cost recovery clauses increases in the magnitude of costs, incurred after implementation of the new base rates, of types or categories (including but not limited to, for example, investment in *721 and maintenance of transmission assets) that have been traditionally and historically recovered through FPUC’s base rates.
In re Fuel & Purchased Power Cost Recovery Clause with Generating Performance Incentive Factor, Order No. PSC-15-0586-FOF-EI at 12, 2015 WL 9450334 (Fla. P.S.C. Dec. 23, 2015). The majority incorrectly concludes that this language “specifically prohibits FPUC from recovering through cost recovery clauses an increase in costs related to investments in transmission assets,” such as the FPL interconnection. Majority op. at 718.
The majority erroneously reads the phrase “increases in the magnitude of costs” to mean “additional costs.” Contrary to the majority’s interpretation, the plain language of the agreement does not prohibit the recovery of “an increase in costs related to investments in transmission assets.” Instead, the agreement prohibits “increases in the magnitude of costs”— that is, an increase in the amount of those costs already existing at the time the settlement agreement was adopted. Thus, while the agreement prohibits cost recovery through the fuel clause for increases in the magnitude of costs that are already being recovered through FPUC’s base rates—such as enhancement, modification, or maintenance of transmission assets accounted for in the base rates—it does not prohibit cost recovery through the fuel clause of entirely new costs related to investments in transmission assets, such as the FPL interconnection. Since the costs of the FPL interconnection are not included in FPUC’s base rates, these costs do not constitute an “increase in the magnitude of costs” for an asset already being recovered through base rates but rather an entirely new cost. We must avoid an interpretation of the agreement that would render the words “magnitude of’ superfluous. See Equity Lifestyle Props., Inc. v. Fla. Mowing and Landscape Serv., Inc., 556 F.3d 1232, 1242 (11th Cir. 2009) (‘We must read the contract to give meaning to each and every word it contains, and we avoid treating a word as redundant or mere surplusage ‘if any meaning, reasonable and consistent with other parts, can be given to it.’ ” (quoting Roberts v. Sarros, 920 So.2d 193, 196 (Fla. 2d DCA 2006)) (applying Florida law).
I also disagree with the majority’s conclusion “that the Commission erred as a matter of law in determining that the construction type costs associated with the actual construction of the physical structure for the [FPL] interconnection are recoverable through the fuel clause pursuant to Order No. 14546.” Majority op. at 716. The Commission allows for purchased-power costs to be recovered through the fuel clause based upon its finding that “[p]urchased power is nothing more than a substitute for power generated.” In re Gen. Investigation of Fuel Adjustment Clauses of Elec. Cos., Order No. 6357 at 7, 1974 WL 331861 (Fla. P.S.C. Nov. 26, 1974).
In Order No. 14546, the Commission stated that its policy for allowing cost recovery through the fuel clause should
be flexible enough to allow for recovery through fuel adjustment clauses of expenses normally recovered through base rates when utilities are in a position to take advantage of a cost-effective transaction, the costs of which were not recognized or anticipated in the level of costs used to establish the utility’s base rates.
In re Cost Recovery Methods for Fuel-Related Expenses, Order No. 14546, 85 F.P.S.C. 7:67, 7:69, 1985 WL 1090146 (Fla. P.S.C. July 8, 1985). Also in Order No. 14546, the Commission enumerated ten fuel-related cost items that are properly considered for recovery through the fuel clause, the tenth of which applies to the costs of the FPL interconnection:
*722 10. Fossil fuel-related costs normally recovered through base rates but which were not recognized or anticipated in the cost levels used to determine current base rates and which, if expended, will result in fuel savings to customers. Recovery of such costs should be made on a case by case basis after Commission approval.
Id. at 7:71. The Commission has since identified this tenth enumerated fuel-related cost item as the “fuel clause exception to base rate recovery.” In re Petition by Fla. Power & Light Co. to Recover Scherer Unit 4 Turbine Upgrade Costs Through Envtl. Cost Recovery Clause or Fuel Cost Recovery Clause, Order No. PSC-11-0080-PAA-EI at 7, 2011 WL 339538 (Fla. P.S.C. Jan. 31, 2011).
In the order on appeal, the Commission cited to previous orders in which it applied the “fuel clause exception to base rate recovery” to various proposed base rate capital costs for which recovery through the fuel clause was requested. In re Fuel & Purchased Power Cost Recovery Clause with Generating Performance Incentive Factor, Order No. PSC-15-0586-FOF-EI at 11 & n.11, 2015 WL 9450334 (Fla. P.S.C. Dec. 23, 2015); id. at 11 n.11 (citing, e.g., In re Petition to Recover Capital Costs of Polk Fuel Cost Reduction Project Through the Fuel Cost Recovery Clause, by Tampa Elec. Co., Order No. PSC-12-0498-PAA-EI, 2012 WL 4482022 (Fla. P.S.C. Sept. 27, 2012) (granting in part and denying in part recovery through the fuel clause of certain capital project costs to convert a power plant from oil- and propane-fired to natural gas upon finding that the project will produce fuel savings by burning a lower priced fossil fuel); In re Petition for Prudence Determination Regarding New Pipeline Sys. by Fla. Power & Light Co., Order No. PSC-13-0505-PAA-EI, 2013 WL 5870547 (Fla. P.S.C. Oct. 28, 2013) (approving recovery through the fuel clause of certain long-term transportation contracts for the delivery of natural gas through a new pipeline system upon finding that the contracts were projected to save up to $450 million over the term of the contracts when compared to the next most cost-effective proposal)).
Further, the Commission received evidence establishing that the FPL interconnection will directly benefit FPUC’s customers by providing an estimated $2.3 million in savings in future purehased-power costs and that the costs associated with the FPL interconnection project were not anticipated and have not been recovered in FPUC’s base rates. Thus, the Commission did not err as a matter of law in allowing FPUC to recover the costs of the FPL interconnection through the fuel clause, and there is competent, substantial evidence in the record to support the Commission’s determination that allowing cost recovery for the interconnection through the fuel clause comports with the Commission’s existing policy under the “fuel clause exception to base rate recovery.” I therefore would affirm the Commission’s order.